**Commonwealth v. Fazzolare**

C.P. of Lawrence County, no. 46 of 2010.

*Kathleen Fee-Baird assistant district attorney,* for Commonwealth.

*Louis M. Perrotta,* for defendant.

COX, *J.,* August 25, 2010—Before the court for disposition is the omnibus pretrial motion filed on behalf of the defendant Robert John Fazzolare which consists of a motion for discovery, a petition for writ of habeas corpus, and a motion to suppress. The Commonwealth has supplied the requested materials to the defendant and the defendant is no longer contesting his motion for

discovery. In his petition for writ of habeas corpus, the defendant argues that the Commonwealth has failed to present sufficient evidence to prove that the defendant committed the offenses of recklessly endangering another person and simple assault. More specifically, the Commonwealth did not prove that the defendant placed the victim in danger of death or serious bodily injury or that the defendant inflicted bodily injury upon the victim. In addition, the defendant claims that the photographic lineup identification was unreliable and prejudicial because the area in which this incident occurred was dark and the photographic array was unduly suggestive; thus, evidence of that identification should be suppressed.

On November 7, 2009, the victim Nicholas DiCarolis, a student at Westminster College, walked from his residence at the Sigma Phi Epsilon fraternity house, which is located at 440 South New Castle Street, New Wilmington, Lawrence County, Pennsylvania, to a party at the Theta Chi fraternity house. The victim was accompanied by Sarah Parish and Salvatore Reino, and they arrived at the Theta Chi fraternity house at approximately 11:30 p.m. The victim began speaking with Elisa Fazzolare, a fellow student at Westminster College, to whom he admittedly made several disparaging remarks. Soon thereafter, the defendant, Ms. Fazzolare's brother, confronted the victim regarding the comments that were made to Ms. Fazzolare. At approximately 1 a.m., the victim, Ms. Parish, Mr. Reino and other members of the Sigma Phi Epsilon fraternity left the Theta Chi fraternity house and began walking back to the Sigma Phi Epsilon fraternity house. As they approached the house, they heard a voice exclaim, "You can't talk to my sister like that," and someone punched the victim in the nose. The force of

the blow caused the victim to fall to the ground and he began bleeding profusely. Mr. Reino, who witnessed the incident, explained that a white male, who was approximately six feet in height and weighed between 185 and 200 pounds, struck the victim in the face. Additionally, Mr. Reino recalled having a verbal altercation with another white male, stated that he was a marine.

The victim was disoriented, but saw a group of white males running through the Westminster College physical plant area towards campus. Subsequently, the victim was escorted to the Sigma Phi Epsilon fraternity house where the police were called. Officer Randall Russo of the New Wilmington Police Department received the call to investigate an alleged assault that occurred near the Sigma Phi Epsilon fraternity house. Once Officer Russo arrived, he observed the victim in the kitchen surrounded by other students. The officer quickly instructed everyone to exit the kitchen area and he called an ambulance for the victim, who was taken to Jameson Memorial Hospital and treated for a broken nose.

While interviewing students at the fraternity house, Officer Russo was informed by Rod Kennedy that he believed the victim was punched by the defendant. The officer determined that the defendant was residing at 305 Russell Hall on the Westminster College campus. Officer Russo went to Russell Hall and spoke with the defendant and his friend Andrew McFeaters. The defendant informed Officer Russo that he confronted the victim at the Theta Chi fraternity house, but denied any involvement in the later physical confrontation with the victim.

On November 10, 2009, at 11:33 p.m., Mr. Reino went to the New Wilmington Police Department police station

to review a photographic lineup, which was constructed by Officer Russo utilizing six pictures received from J-Net.[1] Officer Russo indicated that the pictures were chosen because they were white males with similar characteristics to the defendant, Mr. Reino quickly chose photograph number three, which was a picture of the defendant. Moreover, Ms. Parish was asked to participate in a photographic identification, which she did on November 19, 2009, and she positively identified photograph number three as well.

As a result, the defendant was charged with simple assault[2] and recklessly endangering another person.[3] On March 22, 2010, the defendant filed this omnibus pretrial motion seeking dismissal of the charges of simple assault and recklessly endangering another person. The defendant also contends that the photographic lineup identifications should be suppressed.

A petition for writ of habeas corpus is the proper means for testing a pretrial finding that the Commonwealth has sufficient evidence to establish a prima facie case. *Commonwealth v. Karlson,* 449 Pa. Super. 378, 674 A.2d 249 (1996). In evaluating an accused's entitlement to pretrial habeas corpus relief, a trial court must determine whether there is sufficient evidence to make out a prima facie case that the defendant committed the crime with which he or she is charged. *Commonwealth v. Hock,* 556 Pa. 409, 728 A.2d 943 (1999). This does not mean that

---

1. Officer Russo explained that the photographs taken from J-Net are drivers' license photographs.

2. 18 Pa.C.S. §2701(a)(1).

3. 18 Pa.C.S. §2705.

the prosecution must prove the accused guilty beyond a reasonable doubt, but rather, the prosecution must establish "sufficient probable cause" that the accused has committed the offense. *Commonwealth v. Prosdocimo,* 331 Pa. Super. 51, 479 A.2d 1073 (1984).

The standard in determining whether a defendant is properly held for court is: (a) that the record reveals a prima facie showing that a crime or crimes has been committed; and (b) that the defendant was in some way legally responsible. *Liciaga v. Court of Common Pleas of Lehigh County,* 523 Pa. 258, 566 A.2d 246 (1989). The Commonwealth establishes a prima facie case when it produces evidence that, if accepted as true, would warrant the trial judge to allow the case to go to a jury. *Commonwealth v. Marti,* 779 A.2d 1177 (Pa. Super. 2001). The prima facie case merely requires evidence of the existence of each element of the crime charged. *Id.* at 1180. Additionally, the evidence is to be reviewed in a light most favorable to the Commonwealth and the Commonwealth is entitled to reasonable inferences drawn from the evidence. *Id.* The weight and credibility of the evidence is not a factor at this stage, the Commonwealth need only demonstrate sufficient probable cause to believe the person charged has committed the offense. *Id.*

First, the defendant contends the Commonwealth failed to establish a prima facie case that the defendant committed recklessly endangering another person. Reckless endangering another person occurs when the defendant "engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S. §2705. Moreover, serious bodily injury is defined as "bodily injury which creates a substan-

tial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. §2301. The Commonwealth bears the burden of establishing that the defendant attempted to cause the victim serious bodily injury. *Commonwealth v. Matthew,* 589 Pa. 487, 492, 909 A.2d 1254, 1257 (2006) (citing *Commonwealth v. Alexander,* 477 Pa. 190, 193, 383 A.2d 887, 889 (1978)).

In *Alexander,* 477 Pa. 190, 383 A.2d 887, the victim was standing on a sidewalk and he was struck in the face by the appellant. The victim fell to the ground and was not rendered unconscious by the blow. He was eventually taken to the emergency room and treated for a nose injury. The appellant attempted to flee after striking the victim, but was apprehended by a taxicab driver, who was an eyewitness, and a police officer. The appellant was convicted of aggravated assault at a bench trial. He filed post-trial motions that were denied and he was sentenced to a term of incarceration of nine months to 23 months. He appealed to the Pennsylvania Superior Court, which affirmed the trial court's decision. Subsequently, he filed an appeal with the Pennsylvania Supreme Court, which reversed the order of the Superior Court affirming the judgment of sentence.

The Commonwealth admitted that the appellant did not cause the victim serious bodily injury, but argued that striking the victim in the face demonstrated an intent to cause serious bodily injury. *Id.,* 477 Pa. at 193, 383 A.2d at 889 (See 18 Pa.C.S. §2702(a)(1). The *Alexander* court explained that a punch delivered to the face, without more, cannot support a finding that the appellant

intended to inflict serious bodily injury upon the victim. *Id.,* 477 Pa. at 194, 383 A.2d at 889. "Where the injury actually inflicted did not constitute serious bodily injury, the charge of aggravated assault can be supported only if the evidence supports a finding that the blow delivered was accompanied by the intent to inflict serious bodily injury." *Id.* (citing *Commonwealth v. Caye,* 465 Pa. 98, 348 A.2d 136 (1975); *Commonwealth v. Taylor,* 461 Pa. 557, 337 A.2d 545 (1975); *Commonwealth v. Fostar,* 455 Pa. 216, 317 A.2d 188 (1974)). The *Alexander* Court reasoned that there were no circumstances to support a finding that the appellant garnered the requisite intent as there was not a major difference in size between the appellant and the victim, the appellant was not restrained from escalating his attack upon the victim, he did not have a weapon in his possession and he made no statements before, during or after the attack to indicate his intent to inflict further injury upon the victim, *Id.,* 477 Pa. at 194, 383 A.2d at 889. Thus, the court held that there was insufficient evidence to support a conviction for aggravated assault. *Id.,* 477 Pa. at 194-95, 383 A.2d at 889-90.

Also, the court in *Commonwealth v. Moody,* 295 Pa. Super. 106, 441 A.2d 371 (1982), held the Commonwealth failed to meet its burden that the defendant placed another in danger of death or serious bodily injury where the defendant forced a 12-year-old girl into a basement, struck her when she attempted to leave the basement and touched her in a vulgar manner.

In *Moody, supra,* the defendant accosted a 12-year-old girl while she was walking on the street in front of her home. The defendant forced the girl into the basement

of a building and he molested her. During the encounter, the girl kicked the defendant in the groin and the defendant attempted to flee the building. As the defendant was leaving, the victim also attempted to exit the basement and the defendant struck her in order to keep her in the basement. The girl eventually exited the building and informed others of her situation. The defendant was apprehended after he attempted to drive away and he struck another vehicle. The defendant was convicted after a non-jury trial of attempted rape, indecent assault, simple assault, recklessly endangering another person and unlawful restraint. He subsequently appealed that decision arguing that the Commonwealth failed to provide sufficient evidence to support a conviction for attempted rape, recklessly endangering another person or unlawful restraint.

The court reasoned that the crime of recklessly endangering another person consists of reckless conduct that causes or results in a substantial risk of death or serious bodily injury. *Id.,* 295 Pa. Super. at 112, 441 A.2d at 374 (citing *Commonwealth v. Trowbridge,* 261 Pa. Super. 109, 395 A.2d 1337 (1978)), The *Moody* court explained that it was unable to conclude that the evidence presented established that the defendant placed the victim in sufficient physical danger to support a conviction for recklessly endangering another person. *Id.*

In the case sub judice, the Commonwealth established that the defendant and the victim had a verbal confrontation at the Theta Chi fraternity house after the victim made disparaging remarks to the defendant's sister. At approximately 1 a.m., the victim and his friends walked back toward the Sigma Phi Epsilon fraternity house

where the victim resided. While in route to the house, the victim heard someone state, "You can't talk to my sister like that," and he was struck in the face by a white male, who was later described as being six feet tall and weighing between 185 and 200 pounds. Several days later, Mr. Reino and Ms. Parish identified the defendant as the person who punched the victim while viewing pictures in a photographic lineup. This evidence, if viewed in a light most favorable to the Commonwealth, establishes that the defendant was the person who struck the victim.

However, as the court in *Alexander* explained, a single punch to the face of a victim is not sufficient to prove that the defendant caused or had the intent to cause the victim serious bodily injury. In *Alexander,* the defendant struck the victim in the face, which rendered him unconscious and caused him to seek medical attention. The court recognizes that the *Alexander* case involves aggravated assault, not recklessly endangering another person, but the standard for serious bodily injury or intent to cause serious bodily injury remains the same for both crimes. Furthermore, in *Moody,* the defendant struck a 12-year-old girl in the face in an attempt to keep her trapped in the basement of an abandoned house. The *Moody* court held that a single punch was not sufficient to establish recklessly endangering another person. Similarly, the defendant in the current matter struck the victim in the face and caused him disorientation and a broken nose. Additionally, there did not appear to be a major size difference between the defendant and the victim. Clearly, the defendant did not attempt to inflict further injury upon the victim as well. It must be noted that the defendant did not attempt to strike the victim

again and quickly fled the area where the incident occurred. Therefore, the Commonwealth has not presented sufficient evidence that the defendant engaged in conduct which placed the victim in danger of death or serious bodily injury.

Also, in his omnibus pretrial motion, the defendant argued the Commonwealth has failed to establish a prima facie case that he committed the offense of simple assault. It must be noted that the defendant did not assert this argument in his memorandum of law or during oral argument, but the court will address that contention at this time, A defendant has committed simple assault if he:

"(1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another;

"(2) negligently causes bodily injury to another with a deadly weapon;

"(3) attempts by physical menace to put another in fear of imminent serious bodily injury; or

"(4) conceals or attempts to conceal a hypodermic needle on his person and intentionally or knowingly penetrates a law enforcement officer or an officer or an employee of a correctional institution, county jail or prison, detention facility or mental hospital during the course of an arrest or any search of the person." 18 Pa.C.S. §2701(a).

In *Commonwealth v. Richardson,* 431 Pa. Super. 496, 636 A.2d 1195 (1994), the court determined that the appellant caused bodily injury to a police officer by striking in the face, breaking his glasses, causing him to stumble backwards and suffering physical discomfort for sev-

eral days after the incident. In that case, the police officer was responding to a call regarding a domestic disturbance when he was punched in the face by the appellant. The blow broke the police officer's glasses, he stumbled down a flight of stairs and suffered a sore jaw for a couple of days after the punch, but he did not require medical attention. The *Richardson* court stated that bodily injury is defined as "[i]mpairment of physical condition or substantial pain." *Id.,* 431 Pa. Super. at 498, 636 A.2d at 1196 (quoting 18 Pa.C.S. §2301). It must be noted that the Commonwealth need not prove that the appellant caused bodily injury, but can establish that the appellant committed simple assault by proving, from the circumstances of the case, that he intended to cause bodily injury. *Id.,* 431 Pa. Super at 499, 636 A.2d at 1196 (citing *Commonwealth v. Polston,* 420 Pa. Super. 233, 616 A.2d 669 (1992)). The court ruled that the appellant actually caused the police officer bodily injury as evidenced by the police officer's testimony that the punch broke his glasses, caused him to stumble and he was in pain for the next few days. *Id.*

In the current matter, there has been testimony that the defendant struck the victim in the face causing him to fall to the ground and he was bleeding profusely from his nose. The victim was taken to the hospital and was diagnosed with a broken nose. As the court in *Richardson* indicated a single blow to the face, which causes pain or discomfort, is sufficient to establish the bodily injury requirement set forth in 18 Pa.C.S. §2701(a). Moreover, the broken nose suffered by the victim in this case was more severe than the sore jaw sustained by the police officer in *Richardson.* As a result, the Commonwealth has presented sufficient evidence to establish a prima facie case that the defendant committed simple assault.

Next, the defendant claims the photographic lineup was unduly suggestive because the pictures used contained individuals who had different physical characteristics than the defendant. A pretrial identification is admissible at trial as long as it was not obtained in violation of the defendant's right to counsel or it was procured utilizing a procedure that was unduly suggestive and conducive to irreparable mistaken identification that would deny the defendant due process. *Commonwealth v. Doa,* 381 Pa. Super. 181, 553 A.2d 416 (1989). A photographic lineup is unduly suggestive if the procedure creates a substantial likelihood of misidentification. *Commonwealth v. Fisher,* 564 Pa, 505, 522, 769 A.2d 1116, 1126 (2001) (citing *Commonwealth v. Johnson,* 542 Pa. 384, 396-97, 668 A.2d 97, 103 (1995)). If an identification procedure is unduly suggestive and conducive to irreparable mistaken identification, the defendant is denied due process. *Commonwealth v. Chmiel,* 585 Pa. 547, 585, 889 A.2d 501, 523 (2005), "It is clear, then, that photographic identification of a person is unduly suggestive if, under the totality of the circumstances, the identification procedure creates a substantial likelihood of misidentification." *Id.* (citing *Commonwealth v. DeJesus,* 580 Pa. 303, 860 A.2d 102 (2004)). "Photographs used in lineups are not unduly suggestive if the suspect's picture does not stand out more than those of the others, and the people depicted all exhibit similar facial characteristics." *Commonwealth v. Fisher,* 564 Pa. at 522, 769 A.2d at 1126-27. The Commonwealth has the burden of establishing the identification procedure was not suggestive. *Johnson,* 542 Pa. at 397, 668 A.2d at 103. Additionally, photographic arrays are not unduly suggestive where the pictures depict individuals with

similar permanent physical characteristics, even if some characteristics, such as hair or facial hair, differ. *Commonwealth v. Wheeler,* 498 Pa. 374, 377, 446 A.2d 892, 894 (1982).

This issue was addressed in *Commonwealth v. Nelson,* 399 Pa. Super. 618, 582 A.2d 1115 (1990), in which a witness was shown a photographic array with eight black males, including the appellant, who were similar in age, skin complexion, hair and general appearance. The court reasoned that there was no identifying information on the photographs and the witness was not influenced by the police officer in any manner while she was viewing the photographs. *Id.,* 399 Pa. Super. at 622, 582 A.2d at 1117. As a result, the *Nelson* court held, "No suggestiveness or unfairness was established, and the trial court properly admitted the photographic identification into evidence." *Id.*

Conversely, in *Commonwealth v. Jarecki,* 415 Pa. Super. 286, 609 A.2d 194 (1992), the court determined that the photographic array was unduly suggestive based on the following facts: The police officer presented the photographic array to witnesses six weeks after the robbery occurred. It was shown to at least four witnesses at the same time and all but one of the four witnesses had only seen portions of the perpetrator's eyes, chin, and hair. Only one witness claimed to have seen the perpetrator's entire face and he provided a description for a composite sketch. That witness was the first to identify the defendant's picture. The other witnesses observed his selection and they could infer that the perpetrator's picture was in the display. Additionally, the defendant's photograph in the display was suggestive as the other photographs were head shots, but the defendant's picture

showed his entire torso and the date. Therefore, the *Jarecki* court held that the procedure utilized by the police officer was unduly suggestive as the only individual claiming to see the perpetrator chose the defendant's picture in the presence of the other witnesses and the defendant's picture was so different from the other photographs in the array that it was unduly suggestive. *Id.*

In the current case, Officer Russo constructed a photographic array utilizing pictures from J-Net. He attempted to find people with similar characteristics as the defendant from pictures of suspects in other cases. Even though all of the characteristics of each picture are not exactly the same as the defendant, the photographs chosen were sufficiently similar to prevent the lineup from being unduly suggestive. First, the photographs contained individuals who are white males of similar age as the defendant. Additionally, some of the photographs contained people with similar hair color. However, it must be noted that the hair color varied slightly, but not to a degree that would render the photographic array as unduly suggestive. Similar to the circumstances in *Nelson,* Officer Russo presented Mr. Reino and Ms. Parish with a photographic array that contained individuals of similar age, complexion, hair color, eye color and appearance. Moreover, Mr. Reino and Ms. Parish viewed the photographic array on separate occasions to ensure that both identifications were made from their own independent recollection, unlike *Jarecki.* Thus, the defendant's motion to suppress is denied.

For the reasons set forth in this opinion, the court grants the defendant's petition for writ of habeas corpus in part and the charge of recklessly endangering another person is dismissed; however, the petition for writ of

habeas corpus regarding the charge of simple assault is denied. The court also denies the defendant's motion to suppress regarding Mr. Reino's and Ms. Parish's identifications of the defendant from the photographic array.

## ORDER

Now this, August 25, 2010, this case being before the court on May 26, 2010, and August 2, 2010, for hearings on the omnibus pretrial motion filed by the defendant, with both parties appearing, the Commonwealth of Pennsylvania, represented by counsel, Kathleen Fee-Baird, Esquire, assistant district attorney for the County of Lawrence and the defendant, Robert John Fazzolare, represented by counsel, Louis M. Perrotta, Esquire and after consideration of the testimony presented at the hearing and the memorandums of law filed by both counsel, the court enters the following order and it is hereby ordered, adjudged and decreed as follows:

(1) The motion for discovery contained in the omnibus pretrial motion has been satisfactory complied with by the Commonwealth and is no longer an issue. The court reminds the Commonwealth that discovery is ongoing and the Commonwealth shall continue to comply with the discovery rules if additional discovery is located since the date of this order of court.

(2) In accordance with the attached opinion, the motion to suppress the photographic lineup is hereby denied.

(3) In accordance with the attached opinion, the petition for writ of habeas corpus is hereby granted in part and denied in part.

(4) The petition for writ of habeas corpus regarding the charge of simple assault is hereby denied.

(5) The petition for writ of habeas corpus regarding the charge of recklessly endangering another person is hereby granted.

(6) The charge of recklessly endangering another person is hereby dismissed.

(7) The clerk of courts is directed to serve a copy of this order of court upon counsel of record, Kathleen Fee-Baird, Esquire and Louis M. Perrotta, Esquire.